Good morning, Your Honors. David Markham on behalf of the appellants, Curry et al. I think, especially in light of the fact that the case reaches this Court after ruling on a Rule 12 motion wherein the allegations of the pleading obviously had to be taken as can, if the plan document excludes independent contractors, on the one hand, and leased employees by its actual language, and the defendant elects to treat them as such, because one of the points you raised is that we had not seen such discovery as we had, which was not a whole lot. We hadn't seen a formal classification. In other words, in one of the employment labor wage and hour cases these days, companies list employees, list their job title or description, assign a number and a classification as exempt or non-exempt or other factors. And those documents we didn't have here. So we have a de facto treatment of this group of employees as being either leased or independent contractors. Now we have evidence that they were told they were, yes, advised they were being treated, I would say treated as if they were independent contractors. And the question is, if they are not, in fact, as alleged in the pleading, independent contractors, but actually would satisfy the Darden elements for common law employment, and at the same time ---- I thought there was a stipulation for the purposes of appeal that they were common law employees. Yes, Your Honor. I don't believe that the factual allegation that the complaint begins with was ever challenged. Well, it's not a stipulation. It's an admission by failure challenge. Yes, Your Honor. That being the case, if it is not true that the employees are either independent contractors or, quote, leased employees, unquote, then there is a factual issue as to whether or not the planned documents actually exclude this group of class members. The ---- I have to show under the two different kinds of benefits you're after. One is retirement and the other is health, welfare and cafeteria, right? Yes, Your Honor. All right. Let's take each one in turn. Don't you allege yourself out of the coverage by alleging that the plaintiffs were not paid for their services through Defendant's Payroll Department, but were payrolled through a third-party agency used by the defendants, in other words, Kelly Services? No, Your Honor. If the mere use of the payrolling intermediary, I guess, is the best word, in these cases is what, in fact, happens. The employer doesn't put these people on their payroll or issue them paychecks that have the employer's name on it. They use the agency. But still, if ---- Does the plan require ---- pardon me for interrupting you, Mr. Marcom, but doesn't the plan, the retirement plan, requires that the employer withhold taxes from the employees, the retirement plan? And the health and welfare plan requires that they be on the, quote, U.S. payroll, unquote, of the employer. Now, once you allege that you, that your people were on the payroll of Kelly Services, isn't that the end of the matter? Your Honor, I would submit no, because, in fact, the, in substance, the transaction is twofold, which is money, first step, money goes from employer account to Kelly, and then Kelly covers the paychecks that go to employers. So that in substance, under the plan, these folks are still the employees of the employer, as distinguished from also Kelly. That was the concept in Viscano, which is one could wear two hats simultaneously. Well, you cited the Visconso-Viscano case. But in the Viscano case, they were paid right out of the employer's account. In this case, are you suggesting that the corporate veil, that this was just a ruse to keep from having to pay benefits? What is your argument? Well, the argument, Your Honor, is to recognize that other statement of law in the Viscano case, which is, in these situations of payrolling devices or entities where new employees are brought in, in such structure to try to avoid obligations under the pension or health and benefit rules, that there can be what's called a dual employer, that whereas the employee can be on the payroll of the entity, in this case, or agency, in this case, Kelly, in substance and at law, they can also be employees and common law employees of the employer. So that, for example, in the But the common law employees issue isn't challenged, is it? Isn't that No. All right. So they are common law employees here. Yes. And the only question, if we have to keep the plan separate, for the health and welfare plan, the only issue is, are they on the payroll of their common law employer? And that's what the plan provides, that they have to be on the United States payroll. And the issue, then, is when the money comes from that employer, but it's paid by an agent, are they then on the United States payroll of the employer, the common law employer? Isn't that the issue? For the benefit plan For the benefit plan, the health and welfare plan. Right. Does the term payroll of the employer include more than the person who signs the check? Does it include the person whose funds they are? Well, obviously, Your Honor, we would submit that Is that the issue? Well, for the For the health and welfare Health and welfare plan, our contention is that if the money is moved in a two-step process, both of which are controlled by the employer, then the You're saying they're on the payroll if it's their money? Yes. If the control of funds, step one, step two, and I guess step three The term payroll is a broader term than who signs the check. Yes, Your Honor. It's not the formal name as in the labor code specified. Do you have any We've got two and a half minutes left. Do you want to save time for me? Well, just one last point, and I'll take 15 seconds and save what may be left of my two and a half minutes, Your Honor. The other aspect of this concept of leased employees, as I understood the Bury decision, and I read it, is that the Internal Revenue Code, 414 subdivision N, has itself a definition of leased employees, and I believe that was the basis in Bury, that when there were two hats, what leased employee in plan language, which the same language here as it was in Bury, means is that an employee who is not also, with common law, an employee of the employer. But that was my point. I know I'm well down under the two and a half minutes. Thank you, Your Honor. Thank you. Good morning. Nancy Ober for the defendants. May it please the court. The district court's judgment should be affirmed. There are two issues before the court on this appeal. One is the propriety or the appropriateness of the dismissal of the ERISA claim, and that claim is that the district court has really comes down to three issues. First, are employers entitled to classify some individuals, some workers, as ineligible to participate in their benefit plans? I think that issue was settled long ago in Shaw v. Delta Airlines, in which the U.S. Supreme Court ruled that ERISA does not mandate that employers offer benefit plans at all, and ERISA by itself does not foreclose an employer's distinguishing among employees or discriminating, as the court said, among employees who are eligible to participate. Let me ask you a question. This is on a motion to dismiss. Yes. Is the question of whether the common law employee was treated as an employee of an entity other than McGraw-Hill a question of fact or a question of law? I think at this stage it's a question of law, because the plaintiffs have in fact conceded in their complaint, as what the district court ruled was a binding judicial admission, that in fact they were treated differently for purposes of benefits by the defendants, McGraw-Hill, from its quote-unquote regular payrolled employees. I don't understand what you're saying. They were treated during the course of their employment? They were treated not like employees? Certainly they were treated like employees for some purposes, for many purposes and we have not argued that they are other than common law employees for purposes of this motion. Then why do you say that as a question of law they were treated like independent contractors or whatever, other than employees? Well, I don't really think that there's an issue of fact, I guess, is what I'm trying to say. And I don't even think that there's a legal issue as to their being treated that they were for purposes, again, that they were common law employees, but for purposes of these plans, they were treated as ineligible. So everybody agrees on how they were treated, is that what you're saying? That's correct. Well, what you're saying is anybody that's not treated by the employer as if he's eligible, even if he's an employee, regular employee, if the plan says no, you're not eligible, that means you're not eligible because you're treated as if you're not eligible. Well, a couple of different things. They were told from the outset, first of all, they had employment contracts with Kelly Services. That's part of the allegation of the complaint. They were on Kelly's payroll. That's also alleged by the complaint. But that's not what I'm trying to understand, your concept of the word treated as an independent contractor. The paragraph talks about not how you're treated for unpaid benefits, but how you're treated while you're working. It says a person who performs services under which the individual is treated as an independent contractor is excluded. Not a person who is excluded is excluded. I think the language, your Honor, of the plans that you're referring to is an independent contractor. I think that's the language that Nelson's asking about. Yes. Right. Okay. You're referring to the health plans. Yes. Okay. So these people were not, it's at least a question of fact how they were treated during their employment, unless for this purpose we know they're treated as employees. Well, first they can't be an employee if they're not on the U.S. payroll. Well, that's really a different issue that we're talking about. That's issue one, really, let's say that. If you win on they're not really on the U.S. payroll, then you win. If they win on the argument that U.S. payroll has a broader term that it covers anyone who's paid with your money, then you move on to the second issue. But, your Honor, a very important aspect of this definition and this exclusion is the following language of the definition of employee, which requires not only that the person be treated, it excludes any person who is treated as an independent contractor or an employee of an entity other than the participating company, i.e., McGraw-Hill, and it says, such as in leasing organization, irrespective of whether the individual is treated as an employee of the participating company under common law principles. So the individual could, as these, as we've conceded, they could be an employee of the common law employees of McGraw-Hill, but if from the outset, as the plaintiffs themselves have conceded, we're told you are Kelley employees, you are on Kelley's payroll, and you're not eligible. The whole thing is not the same as being treated in that way during the employment. Your opponents agree or admit or concede, they were told they were going to be other employees. But they say they weren't treated as employees of Kelley. They were treated as if they were employees of McGraw-Hill. Now, I'm not saying they were, I'm just saying for where we are on a motion to dismiss. Well, they were also told that they were temporary or project employees assigned to McGraw-Hill. That's another exclusion. And so with that, and again, that's their admission in the complaint. Their admission is they were told certain things, but they say that's not the way they were treated. They were treated in certain ways for some purposes, but in other ways for benefits purposes. And we're talking about benefits plans. And, Your Honor, I think in the very first case, which started us down this road, which many employers have had to deal with, Vizcano won. The famous decision. The court said that it conceded along, it said, along with the magistrate, agreed with the magistrate, that Microsoft did not have to deal with Vizcano. It could have, by more explicit language in its plans, excluded these common law employees. Which you may well have done in the retirement plan, and you didn't make similar amendments to the health and welfare plan. I agree with you. It's possible for employers to avoid Vizcano 1 if they do it in the right way. And that's all this case is about, whether you succeeded in doing that. Well, Your Honor, again, I think that it's, you don't even get to the language that you're concerned about if you, unless you ignore entirely the question of the payroll. Well, yes, that's, I think, a legitimate issue of what does it mean to be on the U.S. payroll. And I think, Your Honor, that that's a different issue from Microsoft. Microsoft clearly paid the individuals, whether through accounts payable or payroll. It's different. Microsoft is not the identical case, I agree. And this would be an extension where you cover the payment by Company A through an agent of Company B. Microsoft just didn't have it on their payroll, it paid from a different account. Is there any allegation, this is a 12B6 motion, is there any allegation that Kelly Services should be pierced as a corporate veil because of the domination of McGraw? No, there's no such allegation. And I think it would be a great shock to many employers in the country if organizations such as Kelly Services and other professional employer organizations were to be viewed as the same as the employers. I would say Microsoft was a great shock, too, to many employers. That's true. Okay, you're over time, but thank you very much. Very briefly, Your Honors, in listening to counsel's argument, and bear in mind the case came up literally with no discovery at that portion of the rule. Almost, I guess, the first batter of the first inning, I guess, is the way to think about it. The allegations of the pleading are that, in this case, the employees were not treated as if they were anything other than CTV McGraw-Hill employees. That is to say, the office of Kelly, which arranged for the payroll and accounting and bookkeeping, was subsumed within the office of Kelly. And CTV's facility formed solely for that purposes. And everything and anything that was done by the CTV accounting-slash-payrolling people was done at the direction of McGraw-Hill. Was that alleged in the complaint? I'm trying to think without going back through the entire pleading. I believe so, Your Honor. Certainly in the papers in concerning the Rule 12 motion, I'm almost certain we had the reference that the Kelly facility was created and then run and operated and maintained within the CTV facility as opposed to a separate entity. And for purposes of the ERISA plan ---- Well, that would go to the issue of whether we should pierce a corporate veil. But there are other elements besides the location of Kelly Services. Yes. I think what the reason I raised this---- My question to other counsel was, is there any allegation that there was such a total management by McGraw-Hill over Kelly Services that we should disregard the separate corporate entity of Kelly Services? I don't believe we pled, Your Honor, and when the Rule 12 motion came up, we actually pled an alter ego-type piercing theory, the piercing of a corporate veil as a stage. You did plead it? Did you give me the citation? No, I did not, Your Honor. I did not plead it. Thank you. Having said that, the ---- at least as I read Burry interpreting Section 414, the definition of a leased employee for purposes of the plan are those leased employees who are not also employees of the employer defendant. In other words, if Kelly had put these folks on its payroll and McGraw-Hill hired them for, said we need you for six months or a year or 18 months, and then when you're done, we, the employer, Kelly, will put you over in another project. But I think what Burry ---- what this Court in Burry and in construing 414 and its IRC definition of leased employee alludes to those employees who truly are the employees and only the employees of the leasing company, and it's when you get into the dual hat, the employee of the leasing company who also satisfies the common law Darden test that this Court has construed a similar ERISA plan language in Burry as not excluding leased employees, assuming we could show or can prove ultimately the common law employment relationship with McGraw-Hill. But it seems to me that the cause of issue in this case is distinguishable from Burry because it excludes those folks treated as an employee of an entity other than McGraw-Hill. And I think that's the case. Your Honor, I think I understand your point. I read Burry perhaps a little differently than Your Honor does, but as not being distinguishable in this sense, that in Burry, I think it was PG&E, had leased employees from outside services who were, again, alleged to be or the idea was to whether the proof would support it, but they were employees of PG&E as opposed to the leasing company. And the Court construed the definition of leased employee by extracting it from the Internal Revenue Code, that's 414 subdivision N, and said that the leased employee really means people who are employees of the leasing company, period. And so when, for example, in our case, McGraw-Hill was done with them or their project, Kelly would then assign them to some new employer or try to find a new position for them. Here, Kelly's facility within McGraw-Hill is created solely for purposes of providing McGraw-Hill workers to provide McGraw-Hill, work on McGraw-Hill projects for indefinite periods of time exclusively under McGraw-Hill's control. And when McGraw-Hill has no need for anyone, they also disappear off the Kelly payroll. And so if I am right in my reading of Burry that where the two hats occurred, yes, you're technically on the payroll of Kelly. Kelly is the one who turns the employers' matching and other taxes over to the IRS, although the money really comes from McGraw-Hill. And then you're not at least employed within the meaning of the plan. I think I understand your position. Thank you. I'm over my time, Your Honors. Thank you for your patience.
judges: Nelson, Reinhardt, Bea